UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **UNITED STATES OF AMERICA** ) | |
| ) | |
| v.                                    ) | Criminal No. 05-CR-10222 (DPW) |
| ) | |
| **DARNELL UPSHAW**            ) | |

**OPPOSITION TO DEFENDANT DARNELL UPSHAW'S MOTION TO SUPPRESS ALLEGED POST-ARREST STATEMENT, AND REQUEST FOR AN EVIDENTIARY HEARING**

**I.   INTRODUCTION**

The United States of America, by its attorneys, Michael J. Sullivan, United States Attorney, and Cynthia W. Lie, Assistant U.S. Attorney, hereby opposes the defendant's motion to suppress on all four grounds set forth by defendant as follows:

   (A) The post-arrest admissions were initiated entirely by defendant with no questioning by agents;

   (B) The post-arrest admissions were made after defendant was properly Mirandized during booking and Mirandized a second time by Special Agent Robert White during transport;

   (C) Defendant voluntarily, intelligently and knowingly waived his Miranda rights; and

   (D) Defendant was not effected by marijuana use such that his post-arrest statements were involuntary.

**II.  FACTS**

The facts are set forth more fully in the attached Affidavit of ATF Special Agent, Robert J. White, dated February 27, 2006. However, in brief, the defendant was arrested on August 26, 2005, at his home in Framingham, Massachusetts.  The defendant was

1

booked at the Framingham Police Department. There he was Mirandized by Detective Vincent Stuart. Approximately an hour later, Special Agents Robert White and Stephanie Schaefer picked up the defendant to meet others and then to transport him to the federal courthouse for his arraignment.

Special Agent White again Mirandized the defendant. The defendant stated he understood these rights to the two agents. The defendant also mentioned that he had not turned himself in at the advice of his lawyer. Because he mentioned a lawyer, Special Agents White and Schafer deliberately refrained from interrogating the defendant. Special Agent White told the defendant what the charges were and told him about the initial appearance. The defendant denied the charges. However, later during the transport, the defendant remembered the incident and initiated statements to the agents. The defendant said he remembered getting ammunition from Jermaine Politano and bringing it to the CW in this case. Without any questioning or prompting from the agents, the defendant confessed to the crime at issue and described other crimes.

**III. ARGUMENT**

    **A.**    **<u>Defendant's Post-Arrest Statements Were Initiated Solely By the Defendant</u>**

Whether or not the defendant invoked his right to counsel (and the government contends he did not), defendant initiated the

post-arrest statements without any questioning or prompting by law enforcement. As defendant sets forth correctly in his own statement of the law, a defendant's Fifth, Sixth, and Fourteenth Amendment rights are satisfied if "the accused himself initiates further communication, exchanges, or conversations with the police." Edwards v. Arizona, 451 US 477, 484-84 (1981). As set forth in the Affidavit of Special Agent Robert F. White, during transport to the federal courthouse, the defendant referred to his lawyer in the context of why he had decided not to turn himself in to law enforcement. See White Affidavit, ¶ 7. Defendant did not indicate that he wanted to speak with his counsel or that he did not want to speak with law enforcement. White Affidavit, ¶ 15.

To the contrary, Special Agent White deliberately refrained from interrogating the defendant. White Affidavit, ¶ 8. The Supreme Court has held that Miranda is only violated when a defendant is subject to interrogation or the functional equivalent, meaning "any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit and incriminating response from the suspect." Rhode Island v. Innis, 466 U.S. 291, 301 (1980). Special Agent White deliberately refrained from questioning defendant. His actions were those normally attendant to arrest and custody, explaining

the charges to the defendant and the initial appearance process. See White Affidavit, ¶ 8.  Statements to a defendant such as a description of the charges is not considered interrogation. United States v. Conley, 256 F.3d 78, 83 (1998) (officer's description of evidence and of potential charges against a suspect "were not reasonably likely to elicit a response from the [defendant]" and that defendant's statements were more akin to "spontaneous utterances."); See also United States v. Lopez, 389 F.3d 538, 545 (1st Cir. 2004)(officer's "succinct" remark in front of suspect that they had located firearms and narcotics in suspect's vehicle was not interrogation); U.S. v. Genao, 281 F.3d 305, 311 (1st Cir. 2002)(actions by police officer in showing suspect seized items and commenting "We've got a problem here" not interrogation in part because "the remark was brief, was not worded in a confrontational manner, and did not directly accuse [the suspect] of any crime or seek to inflame his conscience").

In this case, the defendant initiated the post-arrest statements, without any questioning or actions equivalent to an interrogation by law enforcement.  Thus, the post-arrest admissions were proper and should not be suppressed.

**B. Defendant Was Mirandized Twice Prior to His Confession**

As set forth in the Affidavit of Special Agent White, the defendant was Mirandized not once, but on two occasions by two different law enforcement personnel, before defendant himself

4

initiated post-arrest admissions.  White Affidavit, ¶ 4, 6. First, defendant was properly Mirandized during booking by the Framingham Police Department.  White Affidavit, ¶ 4.  Second, the defendant was later Mirandized again personally by Special Agent White during transport.  White Affidavit, ¶ 6.  Thus, defendant's post-arrest admissions were proper and should not be suppressed.

C.   **Defendant Voluntarily, Knowingly, and Intelligently Waived His Miranda Rights**

The Supreme Court has clearly held that after being advised of his Miranda rights, the accused may himself validly waive his rights and respond to interrogation.  Edwards, 451 U.S. at 484. In the instant case, not only did defendant state he understood his rights, but he also initiated the post-arrest admissions, as discussed in Section A, above.  See White Affidavit, ¶ 6-15. Thus, defendant's post-arrest admissions were proper and should not be suppressed.

**D. Defendant's Post-Arrest Statements Were Voluntarily Made**

Defendant' contention that he was too high on marijuana to voluntarily waive his Miranda rights and make statements is contrary to his demeanor, appearance, speech, and the totality of the circumstances of the post-arrest admissions.  First, law enforcement found no marijuana or drug paraphernalia upon defendant's arrest on his person or in his home.  White Affidavit, ¶¶ 8-14.  Second, the defendant had no difficulty walking or speaking and did not appear at all under the influence

of marijuana.  White Affidavit, ¶¶ 8-14.

See United States v. Holmes, 632 F.2d 167, 168 (1st Cir. 1980)(holding defendant's statements were voluntary despite intoxication, as police officers did not see defendant "stagger" and there was nothing in the defendant's demeanor to suggest he did not understand what he was doing). U.S. v. Abfalter, 340 F.3d 646, 653 (8th Cir. 2003)(holding defendant "was not so impaired by his marijuana use as to render his confession unintelligent.") Furthermore, although the defendant was in the back of the agents' car, there was no compulsion for him to speak to the agents; there was no physical or psychological coercion. See also Walters, 2001 WL 1028370 at *5 (Unpub. Op.) (despite the fact that defendant was intoxicated, had been taken to the hospital, and had been hit to facilitate his arrest, defendant's statement was voluntary because he "appeared rational, responsive, and coherent"); U.S. v. Oaxaca, 569 F.2d 518, 522-523 (9th Cir. 1978)(holding a confession voluntary despite defendant's heroin withdrawal and a blow to the head, as there was no evidence that the statement was involuntary since police officers testified that the defendant "seemed alert" and gave "fairly specific answers" the officers' inquiries).  Last, defendant was not coerced or made promises by Special Agent White or Shafer.  White Affidavit, ¶¶ 8-14.

For all these reason, the defendant's self initiated post-arrest statements made to Special Agent White and Schafer were proper and should not be suppressed.

**IV. CONCLUSION**

For the foregoing reasons, the defendant's motion to suppress should be denied.

Respectfully submitted,

MICHAEL J. SULLIVAN
United States Attorney

By: /s/ Cynthia W. Lie

CYNTHIA W. LIE
Assistant U.S. Attorney

Dated: February 27, 2006

## AFFIDAVIT OF ROBERT J. WHITE

I, ROBERT J. WHITE, hereby depose and state as follows:

1. I am a Special Agent ("SA") with the United States Department of Justice, Bureau of Alcohol, Tobacco, Firearms, and Explosives ("AFT"), Boston, Massachusetts, and have been so employed since August, 2002. Previously, I served four years as a United States Border Patrol Agent with the Immigration and Naturalization Service ("INS") in Laredo, Texas. In my duties and employment with the ATF and INS, I have received training in State and Federal arrest procedures, firearm and ammunition laws, controlled substances laws, search and seizure, asset forfeiture, money laundering, interdiction of narcotics and/or illegal proceeds, and narcotics investigations. In my assignments, I have participated in numerous investigations and arrests, including those involving drug trafficking, firearms trafficking, and the unlawful possession firearms and ammunition.

2. This affidavit does not include each and every fact that I know concerning this matter. This affidavit merely sets forth information sufficient to oppose the defendant's motion to suppress.

1

3. On the morning of August 26, 2005, police officers from the Framingham Police Department and agents from the ATF executed a federal arrest warrant for the defendant, Darnell Upshaw ("defendant"). The defendant was arrested at 32C Interfaith Terrance, Framingham, Massachusetts. The defendant was transported by the Framingham Police Department personnel to the Framingham Police station and booked there.

4. According to the Framingham Police Department Booking Report (attached), Detective Vincent Stuart read the defendant his rights, including the right to remain silent and the right to counsel.

5. Approximately an hour after defendant's arrest, I transported the defendant with Special Agent Stephanie Schafer from the Framingham Police Department to meet with other ATF personnel at the Brookline Police Station and then ultimately to the United States Courthouse in Boston, Massachusetts for the defendant's initial appearance.

6. When the defendant was turned over to my custody, and in the presence of Special Agent Stephanie Schafer, I read the defendant his Miranda rights, including the right to remain silent and the right to counsel, from the card I carry in my credential case. In my and Special Agent

Schafer's presence, the defendant acknowledged he understood these rights.

7. The defendant had previously been in contact with Special Agents during the previous day via telephone. This previous contact had been an attempt to have the defendant turn himself in at the Brockton Police Station on the federal arrest warrant. In regards to the previous day, during the transport, the defendant told me and Special Agent Schafer that he was not attempting to hide, but that his attorney had advised him not to turn himself into authorities at that time.

8. Since the defendant mentioned he had an attorney, Special Agent Schafer and I deliberately refrained from questioning the defendant. Therefore, during this time, I only informed the defendant that he was to be charged with felon in possession of ammunition and explained the process of the initial appearance. The defendant appeared well-possessed mentally and physically during our contact with him. He did not swagger or have any difficulty with his physical movements or speech, nor did he have any difficulty obeying our directions. In addition, the defendant did not appear to have any difficulty comprehending what I read to him. He was coherent the entire time.

3

9.  Special Agent Schafer and I secured the defendant in handcuffs, as is procedure, in the back of our vehicle and transported him from the Framingham Police station to the federal courthouse in Boston, Massachusetts.

10. During transport, the defendant was not questioned regarding the charges pending against him. After being advised of the charges the defendant denied ever possessing any ammunition and indicated that he had no idea why he was under arrest by ATF.

11. At some point during the transportation, the defendant suddenly remembered the incident at issue and initiated conversation. Without questioning or prompting by myself or Special Agent Schafer, the defendant volunteered statements indicating that he remembered the incident in which he provided ammunition to an individual. Without questioning, intimidation, making promises, or any type of coercion by myself or Agent Schaefer, the defendant proceeded to relay information to us related to various illegal activities, including the crime at issue.

12. The defendant stated, among other things, that his acquaintance, Jermaine Politano ("Politano"), spoke with a black male and made arrangements for the black male to pick something up the following day. Politano then dropped off a box of ammunition at defendant's home. The

4

defendant then described the ammunition and stated that the black male he recognized from the conversation with Politano approached him at his home the following day and made inquiries regarding ammunition. The defendant retrieved the ammunition that Politano dropped off and gave it to the black male.

13. The defendant, without prompting by myself or Special Agent Schafer, then described in detail various individuals involved with firearms in both Brockton, Massachusetts and Boston, Massachusetts. The defendant also discussed several shootings and a murder.

14. The defendant was not found with any marijuana upon his arrest and a consent search of his residence revealed no marijuana or paraphenelia. The defendant did not seem to be under the influence of marijuana during this conversation. During the entire time period during which the defendant made these statements, he remained coherent, calm, and alert, and capable of remembering details. He did not appear to have any trouble understanding what he was saying, nor did he appear to have any trouble speaking or any difficulties with his motor skills. During my experience as an agent, I have spoken with and interviewed numerous persons under the influence of marijuana.

Defendant did not exhibit any signs of being high on marijuana, nor did he smell of marijuana.

15. Furthermore, at no time during the period during which the defendant was being transported by me or to my knowledge during anytime the defendant was arrested until the time he made these statements to me, did defendant request counsel or state that he did not wish to speak with law enforcement.

Signed under the pains and penalties of perjury this 27 day of February, 2006.

*[signature]*

ROBERT J. WHITE
SPECIAL AGENT, ATF

# Framingham Police Department
## Booking Report



**Incident #:** 050753G  
**Booking #:** 0053275

**Name:** UPSHAW, DARNELL ANTOINE  **DOB:** 01/11/1982

**File#:** 98001

**Address:** *** ▓▓▓▓▓▓▓▓ BROCTON MA 02301

**Sex:** M  **Race:** B  **HGT:** 6'00  **WGT:** 175  **Hair:** BLK  **Eyes:** BRO  **P.O.B.:** BOSTON, MA  **Age:** 23

**SS#:** ▓▓▓▓  **OLN:** ▓▓▓▓  **State:** MA  **Mother:** ▓▓▓▓  **Father:** ▓▓▓▓

**Occupation:** BARBER  **Employer:** TALK OF TOWN  **Phone #:** ▓▓▓▓

**Arrest Location:** 37C INTERFAITH TERR  **Arrest Date & Time:** 08/26/05  07:00  
**Arresting Officer:** STUART, VINCENT E  
**Booking Officer:** SHASTANY, P  **Physical Condition:**  
**Assisting Officers:** THOMPSON, R  **Searched By:** PINI, LEONARD J  
**Miranda Officer:** STUART, VINCENT E  **Miranda Time:**  **Miranda Location:**

| Offenses | Counts | Offenses | Counts |
|---|---|---|---|
| WARRANTS-OUTSIDE SEE REMARKS | | | |

**Remarks:** ARRESTED BY SPECIAL OPS TEAM ON ATF FEDERAL WARRANT # 05-CR-10222DPW, FELON IN POSSESSION OF AMMUNITION. WARRANT HELD BY USMS BOSTON. ASSISTED IN SERVICE BY ATF SPECIAL AGENT ROBERT WHITE
**

I hereby acknowledge that the following property / money was taken from me and that I have been advised that I have the right to use the telephone within 1 hour of arrival:

**Cash:** $353.00  **Property:** CHAIN, BRACELET, BELT, BAG

**UPSHAW, DARNELL ANTOINE**  **SHASTANY, P**

I hereby acknowledge that the money/property listed above was returned to me.  
Property taken at booking which is not claimed after thirty (30) days from today may be disposed of at public auction. Please promptly reclaim your property.

**UPSHAW, DARNELL ANTOINE**  **Officer Releasing Prisoner**

**Release Date & Time:**  **Bail Commissioner:**

**Released to:**  **Cell:**  **WMS/Q1/BOP/Q5:**